Opinion
REESE, J.
On or about April 29, 1980, plaintiff filed a claim with the Division of Labor Standard Enforcement, State of California, for vacation pay earned and unpaid at the time of his separation by General Motors Corporation (General Motors). A hearing was conducted before the Labor Commissioner pursuant to Labor Code section 98 et seq.
On April 2, 1981, the Labor Commissioner awarded plaintiff his 1979 vacation pay (minus 1 day taken) and denied his claim for 1980 vacation pay. The *Supp.9 total award was $2,968.22 plus interest of 7 percent per annum from date of entry of judgment, plus any other costs pursuant to Labor Code sections 101.5 and 102.
On April 16, 1981, General Motors filed a notice of appeal from the order, decision or award of the Labor Commissioner with the Los Angeles Municipal Court. Thereafter, on February 5, 1982, a trial de novo was held pursuant to Labor Code section 98.2, subdivision (a) before the Honorable Harold J. Sinclair. On February 8, 1982, the court rendered judgment on General Motors’ behalf, holding that plaintiff claimant take nothing from General Motors. From this judgment, plaintiff timely appeals.

Statement of Facts

The plaintiff was a salaried employee of General Motors from 1956 to April 30, 1979, when he went out on temporary disability due to a heart condition. He remained on temporary disability until permanent disability retirement on May 1, 1980. He received 100 percent of his salary from April 30, 1979, through October, 1979, 75 percent of his salary fom November 1979, until retirement on permanent disability on May 1, 1980, and upon retirement he received 60 percent of his pay for life.
At the time plaintiff went out on temporary disability on April 30, 1979, he was entitled to five weeks of paid vacation, of which he had taken theretofore one day. Plaintiff was on temporary disability continuously until his permanent disability retirement date of May 1, 1980, and he did not take any more of his vacation time.

Issue

Was plaintiff entitled to payment by his employer upon termination for unused vacation time for the year 1979 under the provisions of Labor Code section 227.3?

Discussion

The trial court, upon completion of the trial in the instant case, made the following findings:
“Court finds that plaintiff did not have any vested vacation time upon termination of his employment per disability retirement, and therefore, section 227.3 L.C. is not applicable. Plaintiff lost, waived, surrendered, or ‘forfeited’ his vacation time in 1979, by failing to take same by actions and circumstances not of the defendant’s making. The policy is clearly enunciated that vacations *Supp.10 not taken may not be carried over to following year. If employer thwarts or frustrates an employee’s vacation that employer would be estopped to assert this policy. In the absence thereof the policy must be given adherence. It is ordered, adjudged, and decreed, that on the complaint, the plaintiff Alfred F. Berardi take nothing from Defendant General Motors Corporation.”
Section 227.3 of the Labor Code, which the trial judge found to be inapplicable, reads as follows: “Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness.”
We must first determine the policy of General Motors with reference to employee vacation rights and benefits. In addition to carefully reading the reporter’s transcript of the trial proceedings, we have critically examined the following exhibits introduced at the trial: (1) plaintiff’s exhibit 1 (a complete handbook dated September 1977, entitled “Working with General Motors”); (2) defendant’s exhibit C (excerpts from annual editions of the handbook pertaining to vacation rights for the years 1951, 1953, 1961, 1963 and 1966); (3) defendant’s exhibit D (document entitled “Notice to Salaried Employees —Vacation Policy,” dated “Remove: 1-31-79”); (4) plaintiff’s exhibit 3 (memorandum dated December 10, 1979, entitled “Administrative Changes Regarding the Vacation and Supplemental Time Off Policy for Salaried Employees”); and (5) plaintiff’s exhibit 4 (a foldout entitled “1979 Personal Benefit Summary—Your Share of the General Motors Benefit Program,” dated February 1979 and addressed to the plaintiff at his residence address).
Our examination of the above exhibits, and our reading of the testimony of Robert S. Sutton, witness for General Motors and its general supervisor, salaried personnel administration, compels us to conclude that the handbook, memoranda, bulletins and notices distributed by General Motors to salaried employees very clearly establishes General Motors’ policy with regard to vacation benefits due salaried employees on active payroll. Pages 16 and 17 of plaintiff’s exhibit 1, “Working With General Motors” in pertinent sections, reads:
“Vacation Time—Your vacation is considered essential not only for your own well-being as an individual employee but also for the efficiency of the Cor *Supp.11 poration. Vacations enable you to rest, relax, travel or achieve a number of other leisure time objectives and, upon your return to GM, to contribute a more effective effort. Accordingly, it is GM’s policy to insist that you take the full amount of vacation to which you are entitled each year.
“No salary payment will be made in lieu of vacation. In addition, vacation time cannot be carried over to the following year.
“To be eligible for vacation with pay in the current calendar year, you must be a regular salaried employe and have been on the active roll on December 31 of the previous year (and not terminating employment on that date) or you must have been employed on a regular basis prior to March 31 of the current calendar year.”
Following the above provision are tables indicating vacation eligibility according to employment dates. Plaintiff was employed as of December 31, 1978, and also was on active payroll as of January 1, 1979. General Motors acknowledged that plaintiff’s vacation benefits for 1979 were vested when, in February 1979, they delivered to him plaintiff’s exhibit 4, “Personal Benefit Summary,” reading in the conclusion thereof as follows:
“Your Salary is ........................................................... $28,069*
Cost of Living Allowance ............................................. $ 2,142
Cost to GM for Your Benefits Including $1404
for Social Security Benefits .......................................... $10,222
Total ............................................................. $40,433
“*$4,415 of Your Salary Is Paid to You for Your Vacation and Holidays. You Are Entitled to 5.0 Weeks of Vacation in Calendar Year 1979 Plus Supplemental Time Off Equivalent of 5 Days. There are 13 Holidays During the 1979 Model Year.”
General Motors adopts the position that although plaintiff was entitled to his vacation benefits for calendar year 1979 when the “Personal Benefit Summary” was delivered in February 1979, he forfeited those benefits when he did not request vacation time off in 1979, and that his request for the same in 1980 was too late, amounting to a carryover. We find that such a forfeiture is in direct contravention of the principles set forth in Suastez v. Plastic Dress-Up Co. (1982) 31 Cal.3d 774 [183 Cal.Rptr. 846, 647 P.2d 122] and in violation of section 227.3 of the Labor Code. The court in Suastez defined vested vacation time as not a gratuity or a gift, but additional wages for services performed. The court states on page 784 of the opinion: “The right to a paid vacation, when offered in an employer’s policy or contract of employment, constitutes *Supp.12 deferred wages for services rendered. Case law from this state and others, as well as principles of equity and justice, compel the conclusion that a proportionate right to a paid vacation ‘vests’ as the labor is rendered. Once vested, the right is protected from forfeiture by section 227.3. On termination of employment, therefore, the statute requires that an employee be paid in wages for a pro rata share of his vacation pay.”
General Motors contends in its brief that Suastez, supra, is not applicable to the instant case in that Suastez involved an anniversary date of employment as a condition precedent to an hourly paid employee receiving vacation benefits, while the instant case involves a salaried employee whose vacation is not based on any anniversary date. We are not persuaded. The conditions precedent may vary, but the principle remains constant: Once the benefit has vested, it cannot be forfeited upon termination once the condition precedent has been met. Here, plaintiff was a regular salaried employee on the active roll on December 31, 1978, and employed on a regular basis prior to March 31, 1979. We find that he was therefore entitled to his vacation benefits upon termination pursuant to section 227.3 of the Labor Code.
We are not impressed with General Motors’ position that plaintiff should have returned to work from temporary disability and requested vacation time in 1979, and that failing to do so, he waived his vacation benefits. We find the policy statements of General Motors very vague, ambiguous and misleading in defining the vacation rights of employees who are terminated due to disability. General Motors’ posted “Notice to Salaried Employees” (defendant’s exhibit D), posted from mid-December 1978 through January 1979, lists various types of terminations arid their effect on eligibility for vacation benefits, but disability terminations are not mentioned.
In none of the provisions of General Motors’ Handbook (plaintiff’s exhibit 1), or in any of the other exhibits, are provisions expressly or impliedly set forth from which a reasonable person could determine that an employee who fails to request his vacation benefits due to being on disability leave, and who later retires due to that disability, forfeits those vacation benefits. Such a condition of forfeiture, to be interpreted in favor of General Motors for whom it was created, must be clearly and expressly stated. Otherwise, it must be interpreted in favor of the employee where there is ambiguity. (Civ. Code, § 1442; Preston v. Herminghaus (1930) 211 Cal. 1, 9 [292 P. 953].) In the instant case, other than the subtle admonition “vacation time cannot be carried over to the following year,” we find silence, vagueness and ambiguity with reference to purported forfeiture provisions applicable to terminating disabled General Motors employees. These we cannot enforce.
We further agree with plaintiff’s position that the implied-in-law covenant of good faith and fair dealing contained in all contracts, including employment *Supp.13 contracts, as enunciated in Cleary v. American Airlines, Inc. (1980) 111 Cal.App.3d 443, 453 [168 Cal.Rptr. 722], pertains to the case at bench. On page 3 of plaintiff’s exhibit 3 (“Administrative Changes Regarding the Vacation and Supplemental Time Off Policy for Salaried Employees”) we find the following language:
“To ensure that all salaried employes receive their vacation entitlement, it is important that each division and staff develop effective vacation scheduling and follow-up procedures to accomplish this end. In this regard, it is suggested that, by April 1, all employes should have scheduled their vacation entitlement for the balance of the year. Further, it is suggested that salaried vacation be monitored no later than October 1 to ensure that any remaining entitlements are scheduled and taken by year-end. Finally, it will be the responsibility of each Personnel Director to develop effective local monitoring procedures to ensure that all employes of the unit receive Hxieix full vacation and S.T.O. entitlement. ”
General Motors’ position that plaintiff forfeited his 1979 vacation benefits by not requesting them during calendar year 1979 dictated that the personnel department administering the affairs of plaintiff at General Motors should have advised plaintiff that he should exercise his vacation rights prior to going out on disability, or face the possibility of forfeiting them. This the personnel director failed to do. He did not follow General Motors’ monitoring procedures as set forth in plaintiff’s exhibit 3 above. General Motors, we find, violated its expressed policy of monitoring, and the implied-in-law covenant of good faith and fair dealing by such failure on the part of its personnel director.
The judgment is reversed, with directions on remand to enter judgment for plaintiff in the sum of $2,968.22, plus interest of 7 percent per annum from date of entry of judgment, plus any other costs pursuant to Labor Code sections 101.5 and 102. Plaintiff to recover costs on appeal.
Bernstein, Acting P. J., and Cooperman, J., concurred.